**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | | |
|---|---|---|
| AZURITY PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | 8:26-CV-02391-TPB-NHA |
| v. | ) | |
| | ) | |
| SHEILA BHATTACHARYA AND | ) | |
| SHORLA ONCOLOGY, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT SHORLA ONCOLOGY, INC.'S**
**MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)**

Defendant Shorla Oncology, Inc. ("Shorla"), under Federal Rule of Civil Procedure 12(b)(6), moves to dismiss Counts I, II, IV, and V of Plaintiff Azurity Pharmaceuticals, Inc.'s ("Azurity") First Amended Verified Complaint and Application for Injunctive and Other Relief ("Amended Complaint" or "ECF No. 6") as asserted against Shorla.

**PRELIMINARY STATEMENT**

The Amended Complaint does not allege that Shorla acquired, disclosed, or used any Azurity trade secret. It alleges that Sheila Bhattacharya ("Bhattacharya"), Michael Gitomer ("Gitomer"), and Kimberly Deacon ("Deacon") transferred Azurity materials to personal email accounts before joining Shorla. ECF No. 6 ¶¶ 60, 63–66, 76–81. But it identifies no subsequent transfer to Shorla, no Shorla recipient, no post-hire access to an Azurity file, no disclosure made by anyone acting in a Shorla role, and no Shorla commercial decision or customer contact involving any identified Azurity information.

The allegations concerning Shorla establish employment, competition, and opportunity, not misappropriation. Several months after departing in 2025, Bhattacharya allegedly became

Shorla's Chief Commercial Officer in 2026; Gitomer and Deacon later joined her team; and Bhattacharya attempted to attend Deacon's TRO hearing. *Id.* ¶¶ 74–76, 88–94. Those allegations do not connect any Azurity trade secret to any act by Shorla. Paragraph 82 alleges, based only on "timing and circumstances," that Bhattacharya plotted with Gitomer and Deacon to take information indirectly for Shorla's benefit. Counts I and II then allege that Shorla "accepted" Bhattacharya's disclosure, retention, "and/or" use. *Id.* ¶¶ 82, 117, 135. Those are conclusions. They do not identify what Shorla supposedly acquired, who acquired it, when the acquisition occurred, how the information was disclosed, or what conduct constituted use.

The missing connection cannot be supplied by Bhattacharya's position at Shorla or by Shorla's competitive relationship with Azurity. Although a corporation may act through an employee, the Amended Complaint still must allege facts supporting an inference that Bhattacharya accessed, disclosed, or exploited an Azurity trade secret after joining Shorla and while acting in her Shorla role. It does not.

Nor does it allege facts showing that Shorla knew what Bhattacharya, Gitomer, or Deacon had sent to their personal accounts. Azurity sent its August 7, 2026 cease-and-desist letter to Bhattacharya, not Shorla, and does not allege that Shorla received it. *Id.* ¶¶ 84–86. As set forth below, the cases permitting trade-secret claims to proceed on circumstantial allegations involved facts connecting the charged defendant to access, direction, transfer, or competitive exploitation. No comparable factual connection is alleged here.

Counts IV and V do not cure that deficiency. Count IV alleges no facts showing what Shorla communicated or did to induce Gitomer or Deacon to leave Azurity or breach an obligation, why any alleged recruitment was unjustified, or what resulting loss was caused by Shorla. Similarly, its customer-and-vendor theory identifies no particular relationship. Count V identifies

pre-departure email transfers as the underlying breaches but alleges no communication, knowledge, or assistance by Shorla when those transfers occurred. To the extent either claim depends on Shorla's alleged receipt or use of trade secrets, it is displaced by the Florida Uniform Trade Secrets Act ("FUTSA"); to the extent it rests on independent recruitment or litigation conduct, it is inadequately pleaded.

The Amended Complaint thus substitutes Shorla's status as a competitor and subsequent employer for facts showing conduct by Shorla. Both the Defend Trade Secrets Act ("DTSA") and FUTSA require acquisition, disclosure, or use, not merely opportunity or assumed benefit. Because Azurity pleads no facts supporting any such statutory act by Shorla, and because its derivative tort theories are either displaced or independently deficient, Counts I, II, IV, and V should be dismissed as asserted against Shorla.

## ALLEGATIONS IN AMENDED COMPLAINT

Azurity and Shorla are Delaware corporations headquartered in Massachusetts. ECF No. 6 ¶¶ 6, 8. Azurity alleges that their pediatric liquid methotrexate products, Xatmep and Jylamvo, compete directly. *Id.* ¶ 75. Bhattacharya formerly served as Azurity's Vice President of Market Access & Strategic Accounts. *Id.* ¶¶ 27-29.

Azurity alleges that before her September 2, 2025 separation, Bhattacharya retained information and emailed to her personal Yahoo account a commercial-due-diligence presentation and an Oncology Monthly Franchise Alignment Review presentation. *Id.* ¶¶ 60, 63-66. Paragraph 73 alleges, on information and belief, that she used and distributed confidential information, without identifying when, to whom, or how. Months later in 2026, she joined Shorla as its Chief Commercial Officer. *Id.* ¶ 74.

Gitomer and Deacon left Azurity on June 5 and June 19, 2026 and later joined Bhattacharya's Shorla team. *Id.* ¶ 76. They allegedly forwarded identified categories of Azurity information to personal email accounts before leaving. *Id.* ¶¶ 77-81. Paragraph 82 alleges, on information and belief based on "timing and circumstances," that Bhattacharya solicited them and plotted with them to take information for themselves and indirectly for Shorla. It alleges no communication, request, Shorla participant other than Bhattacharya, or post-hire transfer or use.

On August 7, 2026, Azurity sent only Bhattacharya a cease-and-desist letter. *Id.* ¶¶ 84-86. The pleading does not allege that Shorla received that letter. Bhattacharya later sought to attend Deacon's August 18 TRO hearing and suggested she was attending for Deacon and Shorla. *Id.* ¶¶ 88-93. Paragraph 94 concludes that her solicitation, hearing participation, and "apparent facilitation" of misappropriation occurred within the scope of Shorla employment and in furtherance of Shorla's interests. Counts I and II then allege, on information and belief, that Shorla "accepted" Bhattacharya's disclosures, retention "and/or" use and knew or should have known she was prohibited from retaining or using the information. *Id.* ¶¶ 117, 119, 135, 137.

**LEGAL STANDARD**

A complaint must contain enough factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court accepts well-pleaded facts, not legal conclusions or "[t]hreadbare recitals" supported by conclusory statements. *Iqbal*, 556 U.S. at 678–79. Allegations pleaded on information and belief are not categorically defective, but they must still be supported by factual content making the inference of liability plausible. *See Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013). Pleading on information and belief is permissible where facts are peculiarly within a defendant's control, but the belief still must rest on factual information making culpability

plausible. *Direct Components, Inc. v. Microchip USA, LLC*, No. 8:23-CV-1617-VMC-SPF, 2024 WL 1929522, at *6 (M.D. Fla. May 2, 2024).

## ARGUMENT

### I. COUNTS I AND II DO NOT PLAUSIBLY ALLEGE MISAPPROPRIATION BY SHORLA ONCOLOGY.

#### A. The DTSA and FUTSA require acquisition, disclosure, or use by the charged defendant.

The DTSA defines misappropriation through acquisition by improper means or unauthorized disclosure or use accompanied by the required knowledge. 18 U.S.C. § 1839(5). FUTSA is materially parallel. Fla. Stat. § 688.002(2). A claim against Shorla therefore requires facts supporting an inference that Shorla acquired, disclosed, or used an identified trade secret with the statutorily required knowledge. *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1312-15 (11th Cir. 2020); *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1297-98 (11th Cir. 2018).

Employment by a competitor is not itself a statutory act. *Del Monte Fresh Produce Co. v. Dole Food Co.*, 148 F. Supp. 2d 1326, 1337-38 (S.D. Fla. 2001). Nor must Azurity allege that Bhattacharya transferred a file to a second Shorla employee. But it must allege facts supporting a plausible inference that, after joining Shorla, she accessed, disclosed, or exploited an Azurity trade secret while acting within her Shorla role. *See Enteris Biopharma, Inc. v. Clinical Pharmacology of Miami, Inc.*, No. 1:14-CV-22770-UU, 2015 WL 12085848, at *10 (S.D. Fla. Mar. 20, 2015) (granting motion to dismiss and dismissing trade secret claim where the complaint did not plead facts showing that the competing defendant acquired or used the alleged trade secrets). Paragraphs 74-75 of the Amended Complaint plead her title and a competitive product. Paragraphs 90-94 plead coordination surrounding litigation. None pleads post-hire access to an Azurity file, a commercial

decision reflecting protected information, a disclosure, a customer contact using protected information, or any other act involving an identified trade secret.

### B. *North Palm* provides the framework, but Azurity's pleaded facts do not satisfy it.

*North Palm Motors, LLC v. Custom Fleet Services, Inc.*, No. 4D2025-0167, 2026 WL 2931203, at *18-20 (Fla. 4th DCA Sept. 30, 2026), recognizes that a later recipient may be liable even if it did not direct the original taking. But the plaintiff still must establish a later acquisition or use and knowledge or reason to know of the improper source. *Id.* North Palm also states that possession alone is insufficient and "reason to know" does not impose a duty to investigate. *Id.* at *18-19.

The inference in *North Palm* was supported by connecting circumstances, including simultaneous work for the old and new businesses, immediate revenues without employees or marketing, and customer disputes revealing use of the former employer's database. *Id.* at *19-20. Here, the pleaded facts establish opportunity but do not connect that opportunity to a statutory act. The identified transfers went to personal accounts before the employees joined Shorla. ECF No. 6 ¶¶ 60, 63-66, 76-81. Paragraph 82 alleges only an indirect benefit to Shorla, and paragraphs 117 and 135 supply only the conclusion that Shorla "accepted" retention or use.

The scienter allegations are equally conclusory. Azurity alleges that Shorla "knew, or should have known" Bhattacharya was prohibited from retaining or using the information. *Id.* ¶¶ 119, 137. But the complaint does not allege that Shorla received the August 7 letter, knew what Bhattacharya had sent to her Yahoo account, knew what Gitomer or Deacon sent themselves, or learned of any retained item through the TRO proceeding. Knowledge that senior employees came from a competitor does not itself establish knowledge of an improper taking, and *North Palm* rejects converting "reason to know" into a free-standing duty to investigate.

### C. Circumstantial pleading still requires facts connecting Shorla to acquisition, disclosure, or use.

#### 1. *Datto* Alleged Forensic Access and Post-Employment Use.

In *Datto, Inc. v. Moore*, No. 8:20-CV-2446-T-33TGW, 2020 WL 7318957 (M.D. Fla. Dec. 11, 2020), plaintiff alleged that a former employee connected multiple USB devices, accessed hundreds of confidential files after his responsibilities ended, retained the devices, joined a direct competitor in a substantially overlapping role, and used the information. Those allegations supplied a post-departure act and a factual basis for inferring use. *Id.* at *8. By contrast, the Amended Complaint here pleads no comparable post-hire access, transfer, disclosure, or use by Bhattacharya in her Shorla role.

#### 2. *Preferred Drilling* does not eliminate the need for defendant-specific conduct.

In *Preferred Drilling Sols., Inc v. Bonacum,* No. 8:25-CV-806-MSS-CPT, 2026 WL 776202 (M.D. Fla. Mar. 19, 2026), the court declined to require exhaustive identification of the alleged secrets where the complaint described proprietary bidding and operational information and tied the former executive and competing entity to alleged competitive conduct. However, that ruling does not merge two separate questions: whether the claimed secrets are identified and whether the complaint pleads acquisition, disclosure, or use by the charged defendant. *Id.* at *6-8. Even if Azurity sufficiently identifies its information in paragraphs 53-56 and 65-66, it pleads no Shorla-specific statutory act.

#### 3. *Bayport* pleaded direct communications, direction, and a transfer pathway.

In *Bayport Fin. Serv. (USA) Inc. v. BayBoston Managers, LLC*, No. 1:22-CV-21306-JEM, 2023 WL 2633298 (S.D. Fla. Mar. 3, 2023), report and recommendation adopted, No. 22-21306-CIV, 2023 WL 2631502 (S.D. Fla. Mar. 24, 2023), the complaint alleged that a named executive

traveled under a false business purpose to educate corporate defendants about the plaintiff's operations, that corporate defendants directed and supported another executive's taking, and that participants concealed a resignation and recruited additional executives. Those allegations identified who communicated with whom, for what purpose, and how the corporate defendants entered the alleged scheme. *Id.* at *11. Paragraph 82 here identifies none of those facts.

**4. *Trinity Graphic* alleged a concrete access-and-replication scheme.**

In *Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F. Supp. 3d 1285, 1289-94 (M.D. Fla. 2018), the facts involved allegations that identified participants obtained access to a specialized printing process, shared it, and used it to provide the same service. The court declined to resolve the resulting factual dispute at the pleading stage. *Id.* at 1293. *Trinity* underscores that Azurity's failure to include allegations describing the access, communication, transfer, or resulting conduct by Shorla makes Azurity's pleading defective.

**5. *Direct Components* confirms that information-and-belief allegations need supporting facts.**

*Direct Components* recognized that information-and-belief pleading may be appropriate for facts within a defendant's control, but dismissed DTSA and FUTSA claims because the complaint did not plead facts supporting its beliefs about misappropriation and disclosure. *Direct Components, Inc.,* 2024 WL 1929522, at *6. The same defect is present here. Paragraph 82 alleges a plot based on "timing and circumstances," and Paragraphs 117 and 135 say Shorla "accepted" disclosure, retention, or use. None describes the communication, access, corporate act, or other circumstance from which Shorla's culpability plausibly follows.

**D. Pre-employment retention is not automatically attributable to Shorla, and ratification is not pleaded.**

Under Florida law, an employee acts within the scope of employment when the conduct is of the kind the employee was hired to perform, occurs substantially within authorized time and space limits, and is motivated at least partly by a purpose to serve the employer. *McGhee v. Volusia County*, 679 So. 2d 729, 732-33 (Fla. 1996); *Ibarra v. Ross Dress for Less, Inc.*, 350 So. 3d 465, 467-68 (Fla. 3d DCA 2022). Conduct completed before employment cannot satisfy those requirements merely because the actor later joins the employer. The alleged Yahoo-account transfers occurred many months before Bhattacharya's Shorla employment. ECF No. 6 ¶¶ 60, 63-66, 74.

Paragraph 94 labels three categories of conduct as within the scope of employment: solicitation, attempted participation in the TRO hearing, and "apparent facilitation" of misappropriation. ECF No. 6 ¶ 94. The first two are factual subjects, but neither constitutes acquisition, disclosure, or use of a trade secret. The third merely restates the disputed conclusion. The allegation therefore does not supply the missing statutory act. The Amended Complaint still must plead that she accessed, disclosed, or used an Azurity trade secret while acting in her Shorla role. It does not.

Ratification also requires an intelligent act by the principal, with full knowledge of material facts, clearly showing an intent to adopt the unauthorized conduct. *Frankenmuth Mutual Insurance Co. v. Magaha*, 769 So. 2d 1012, 1021-22 (Fla. 2000); *Stalley v. Transitional Hospitals Corp. of Tampa, Inc.*, 44 So. 3d 627, 630 (Fla. 2d DCA 2010). The complaint does not allege that a Shorla decisionmaker knew what Bhattacharya retained, knew of a specific disclosure or use, and adopted that act or knowingly retained its benefit. Hiring her, employing Gitomer and Deacon, or monitoring litigation does not plead ratification of an unidentified trade-secret act.

### E. The collective and alternative allegations do not give Shorla fair notice.

The problem is not merely that the allegations refer collectively to both defendants. The complaint expressly names Shorla, but does so only through alternative legal conclusions that fail to identify whether the asserted corporate act was acquisition, disclosure, use, ratification, or vicarious liability. Counts I and II combine Bhattacharya's pre-employment retention, her alleged personal disclosure or use, and Shorla's supposed acceptance through "and/or" allegations. ECF No. 6 ¶¶ 114-19, 134-37. Shorla cannot determine whether it is charged with acquisition, disclosure, use, vicarious liability, or ratification, or the facts supporting any theory. At minimum, Azurity should be required to identify the statutory act and actor charged to Shorla.

## II. COUNT IV DOES NOT PLAUSIBLY ALLEGE TORTIOUS INTERFERENCE AND ITS TRADE-SECRET-DEPENDENT THEORY IS DISPLACED BY FUTSA.

Florida requires a business relationship affording existing or prospective legal rights, the defendant's knowledge, intentional and unjustified interference, and resulting damage. *Duty Free Americas, Inc. v. Estée Lauder Cos.*, 797 F.3d 1248, 1279 (11th Cir. 2015). A relationship with the market or community at large is insufficient. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814-15 (Fla. 1994).

Azurity identifies its employment relationships with Gitomer and Deacon. ECF No. 6 ¶ 151. But it does not allege what Shorla, as distinct from Bhattacharya, communicated or did to induce either employee to leave Azurity or breach an obligation, which Shorla actor engaged in that conduct, or facts showing that the alleged interference was unjustified. Paragraph 154 groups both defendants together and alleges that they attempted to divert business and recruit or hire employees.

Paragraph 156 adds unspecified ongoing efforts to solicit other employees. Neither paragraph identifies a Shorla communication or act that caused Michael Gitomer or Kimberly Deacon to leave or breach an obligation, or connects any resulting loss to Shorla's conduct.

The customer-and-vendor theory is separately deficient. Count IV refers to "current customers and current vendors," *id.* ¶ 151, but identifies no particular customer or vendor relationship, expected transaction, account, communication, or diversion. General categories of market participants do not plead a protectable relationship under *Ethan Allen*.

The theories must also be separated for FUTSA displacement. To the extent Count IV rests on Shorla's alleged receipt or use of trade secrets to divert business, it duplicates Counts I and II and is displaced. Fla. Stat. § 688.008; *Nephron Pharmaceuticals Corp. v. Hulsey*, No. 6:18-cv-1573, 2020 WL 7684863, at *15-16 (M.D. Fla. Oct. 7, 2020). To the extent Count IV rests on recruitment independent of trade-secret misuse, it is not necessarily displaced, but it fails for the defendant-specific, justification, causation, and damages defects described above.

## III. COUNT V DOES NOT PLAUSIBLY ALLEGE ACTUAL KNOWLEDGE OR SUBSTANTIAL ASSISTANCE AND ITS TRADE-SECRET-DEPENDENT THEORY IS DISPLACED BY FUTSA.

Aiding and abetting breach of fiduciary duty requires an underlying breach, actual knowledge, substantial assistance or encouragement, and injury. *Lamm v. State Street Bank & Trust*, 749 F.3d 938, 950 (11th Cir. 2014); *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1176-82 (11th Cir. 2025). Knowledge may be alleged generally, but surrounding facts must make actual knowledge and assistance plausible.

Count V identifies the primary breaches as Gitomer's and Deacon's pre-departure forwarding of Azurity information. ECF No. 6 ¶¶ 159-62. Yet the complaint alleges no Shorla communication before those transfers, no Shorla representative who knew either transfer was

occurring, and no assistance that enabled it. Paragraphs 163-65 infer Shorla's knowledge and assistance solely from Bhattacharya's positions at Azurity and Shorla. Paragraph 166 adds four theories, but each remains conclusory: solicitation and employment opportunity do not show knowledge of or assistance with a secret transfer; subsection (c) alleges direction or encouragement only on information and belief without a speaker, request, timing, or category requested; and monitoring later enforcement proceedings could not assist transfers already completed.

The facts in *Aquent LLC v. Stapleton*, 65 F. Supp. 3d 1339, 1350-52 (M.D. Fla. 2014), are materially different. There, the new employer allegedly provided work, compensation, a laptop, and database access while knowing the employee still worked for the plaintiff. *Id.* Here, no fact connects Shorla to Gitomer's or Deacon's pre-departure forwarding.

Paragraph 167 attempts to plead ongoing assistance through Bhattacharya's participation in the August 18 hearing. But defending or monitoring litigation, after the alleged takings, is not substantial assistance in the underlying breaches absent facts showing that the conduct enabled continued retention or misuse. The Amended Complaint identifies no information concealed, device shielded, instruction given, or further breach caused by the hearing conduct.

Finally, to the extent Count V treats direction, receipt, retention, or exploitation of trade secrets as the substantial assistance, it duplicates the FUTSA claim and is displaced. To the extent it relies on independent recruitment or litigation conduct, it fails because the complaint does not plausibly allege Shorla's actual knowledge of Gitomer's or Deacon's specific breach or affirmative assistance in it.

## IV. DISMISSAL OR TARGETED REPLEADING IS APPROPRIATE.

The Court should dismiss Counts I, II, IV, and V as asserted against Shorla. If leave is granted, Azurity should be required to identify, without discovery-level detail: (1) the alleged post-

hire acquisition, disclosure, or use by Shorla or Bhattacharya in her Shorla role; (2) the facts supporting Shorla's knowledge at the time; (3) the particular business relationship and Shorla act supporting Count IV; and (4) the affirmative assistance allegedly supplied with actual knowledge for Count V. That relief applies Rule 8 and Twombly without imposing a heightened pleading standard.

## CONCLUSION

Shorla respectfully requests that the Court dismiss Counts I, II, IV, and V of the Amended Complaint under Rule 12(b)(6), and grant such other relief as the Court deems appropriate.

Dated: October 26, 2026

Respectfully submitted,

/s/ *Miguel Alexander Pozo*
Miguel Alexander Pozo, Esquire
MN ID No. 0400728
*Pro Hac Vice Admission*
**COZEN O'CONNOR**
150 South Fifth Street, Suite 1200
Minneapolis, MN 55402
(612) 260-9073
mpozo@cozen.com

Bobbi Britton Tucker, Esquire
PA ID No. 86463
*Pro Hac Vice Admission*
**COZEN O'CONNOR**
One Oxford Centre
301 Grant Street, 41st Floor
Pittsburgh, PA 15219
(412) 620-6519
bbrittontucker@cozen.com

Robert L. Rocke
Florida Bar No. 710342
**BERGER SINGERMAN, LLP**
2309 S. MacDill Avenue

Tampa, Florida 33629
(813) 498-3400
Email: rrocke@bergersingerman.com

Raul Valles, Jr.
Florida Bar No. 148105
**BERGER SINGERMAN, LLP**
2309 S. MacDill Avenue
Tampa, Florida 33629
(813) 498-3400
Email: rvalles@bergersingerman.com
Secondary: lknox@bergersingerman.com
E-Service: DRT@bergersingerman.com
E-Service: DRT@ecf.inforuptcy.com

Counsel for Defendant Shorla Oncology, Inc.

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned counsel certifies that on October 26, 2026, he and Robert Rocke, Esquire together conferred with Parker Thoeni, Esquire, counsel for Plaintiff, via a Teams video conference call regarding the relief requested in the underlying Motion. Plaintiff opposes the Motion.

Dated: October 26, 2026

*/s/ Miguel Alexander Pozo*
Miguel Alexander Pozo, Esquire
*Pro Hac Vice Admission*
Counsel for Defendant Shorla Oncology, Inc.

**CERTIFICATE OF SERVICE**

I certify that on October 26, 2026, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which will serve all counsel of record.

Dated: October 26, 2026

*/s/ Miguel Alexander Pozo*
Miguel Alexander Pozo, Esquire
*Pro Hac Vice Admission*
Counsel for Defendant Shorla Oncology, Inc.