**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | | |
|---|---|---|
| AZURITY PHARMACEUTICALS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SHEILA BHATTACHARYA AND SHORLA ONCOLOGY, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 8:26-CV-02391-TPB-NHA |

**DEFENDANT SHORLA ONCOLOGY, INC.'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Defendant Shorla Oncology, Inc. ("Shorla")[1] respectfully submits this Brief in Opposition to Plaintiff's Motion for Preliminary Injunction against Defendants Bhattacharya and Shorla (ECF No. 23) filed by Plaintiff Azurity Pharmaceuticals, Inc. ("Azurity"), and states as follows:

## I. PRELIMINARY STATEMENT

Azurity asks this Court to impose injunctive relief on Shorla without any evidence that Shorla ever requested, received, reviewed, disclosed, used, or benefitted from any Azurity trade secret or confidential information. As set forth in the accompanying Declaration of Sharon Cunningham ("Cunningham"), Shorla's

[1] This brief is submitted only on behalf of Shorla. Defendant Sheila Bhattacharya ("Bhattacharya") will submit a separate response to Plaintiff's Motion for a Preliminary Injunction.

Chief Executive Officer, Shorla never requested Azurity information, never received Azurity information, and never used Azurity information. (Declaration of Sharon Cunningham ("Cunningham Decl.") ¶¶ 12-17.)

Azurity's theory against Shorla is simple: three former Azurity employees forwarded documents to their personal email accounts while still employed by Azurity and later joined Shorla, an alleged competitor. From that sequence alone, Azurity asks the Court to infer that Shorla must have received and must be using Azurity information. But the Motion devotes a single paragraph to Shorla, identifies no Azurity document transmitted to Shorla, and no business decision, customer contact, pricing decision, or contract negotiation that relied on Azurity information. ECF No. 23 at 14-15.

Competition is not misappropriation, and employee mobility is not trade secret theft. Because Azurity cannot establish that Shorla acquired, disclosed, or used any Azurity trade secret, it cannot establish a likelihood of success on the merits, irreparable harm, or any other prerequisite for injunctive relief against Shorla. Accordingly, the Motion should be denied as to Shorla.

## II. FACTUAL BACKGROUND

Azurity and Shorla are Delaware corporations headquartered in Massachusetts. ECF No. 6 ¶¶ 6, 8. Azurity alleges in its Complaint that both companies market pediatric liquid methotrexate products that compete directly in the market. *Id.* ¶ 75.

Bhattacharya served as Azurity's Vice President of Market Access & Strategic Accounts from August 2022 until Azurity terminated her employment. ECF No. 6 ¶ 27; ECF No. 24 ¶ 60. Azurity terminated Bhattacharya's employment on September 2, 2025, and her access to Azurity systems ended the same day. *Id.* Azurity alleges that Bhattacharya retained Azurity information when she emailed two presentations to her personal Yahoo account before her employment termination: a commercial due diligence presentation and an Oncology Monthly Franchise Alignment Review presentation. ECF No. 23 at 5; ECF No. 6 ¶¶ 64-66. Bhattacharya has stated that she forwarded work documents while employed solely to perform her Azurity duties, that she has never used or disclosed them for any other purpose, and that she has never provided any of them to Shorla or any other third party. ECF No. 24 ¶ 64, Fourth Defense.

Bhattacharya began working for Shorla in April 2026, several months after her employment termination from Azurity, and did not receive an offer from Shorla until months after she left Azurity. ECF No. 24 ¶ 74; Cunningham Decl. ¶ 11. Two

additional Azurity employees, Michael Gitomer ("Gitomer") and Kimberly Deacon ("Deacon"), left Azurity on June 5 and June 19, 2026, respectively, and subsequently joined Bhattacharya's team at Shorla. ECF No. 6 ¶ 76. Azurity alleges that, before departing, both employees forwarded categories of Azurity information to their personal email accounts. ECF No. 23 at 5. Based on the "timing and circumstances" of those departures, Azurity further alleges, on information and belief, that Bhattacharya solicited Gitomer and Deacon and conspired with them to retain Azurity information for themselves and, indirectly, for Shorla. ECF No. 23 at 5.

Cunningham, Shorla's CEO, has submitted a sworn declaration in opposition to the Motion. Cunningham confirms that Shorla has never instructed, requested, or permitted Bhattacharya, Gitomer, Deacon, or any other current or former Azurity employee to obtain, disclose, or use Azurity confidential information or trade secrets. Cunningham Decl. ¶¶ 12,17. To her knowledge, Shorla has never received any Azurity confidential information or trade secrets, and no Shorla business decision, strategy, customer relationship, pricing decision, or competitive advantage has been based on or derived from Azurity information. *Id.* ¶¶ 13–15, 17. Shorla also expects and requires its employees to honor their confidentiality obligations to former employers. *Id.* ¶ 10.

On August 7, 2026, Azurity sent a cease-and-desist letter to Bhattacharya. ECF No. 6 ¶ 84. Azurity does not allege that it sent that letter to Shorla. *See id.*

¶¶ 84–86. Ten days later, Azurity commenced this action against Bhattacharya. Azurity subsequently filed its First Amended Verified Complaint and Application for Injunctive and Other Relief ("Amended Complaint") adding Shorla as a defendant. ECF No. 6. Although Azurity sought emergency injunctive relief in related actions involving Gitomer and Deacon in August 2026, it did not seek preliminary injunctive relief against Bhattacharya and Shorla until October 23, 2026. ECF No. 23. By then, more than a year had passed since Bhattacharya's September 2025 separation from Azurity and more than two months had passed since Azurity sent its cease-and-desist letter. On October 26, 2026, Shorla filed a Motion to Dismiss the Amended Complaint, which is pending. Shorla moved to dismiss the claims asserted against it under Rule 12(b)(6) on the ground that the Amended Complaint does not plead facts showing that Shorla acquired, disclosed, or used any alleged trade secret. ECF No. 25.

Azurity now seeks the extraordinary remedy of a preliminary injunction against Shorla. The Motion, however, is aimed principally at Bhattacharya, and its lone request for relief against Shorla has no factual basis. Azurity also cannot carry its burden on any element required for preliminary injunctive relief: it cannot show a likelihood of success on the merits, irreparable harm, a balance of hardships in its favor, or that an injunction would serve the public interest. Therefore, the Court should deny the Motion.

## III. ARGUMENT

### A. Legal Standard

A preliminary injunction is "an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites." *Liberty Am. Ins. Group, Inc. v. WestPoint Underwriters, L.L.C.*, 199 F. Supp. 2d 1271, 1298 (M.D. Fla. 2001) (quoting *Cunningham v. Adams*, 808 F.2d 815, 819 (11th Cir. 1987)). A court cannot grant a request for preliminary injunction unless the movant establishes: (1) a likelihood of success on the merits; (2) that the movant will suffer irreparable injury in the absence of the injunction; (3) that the threatened injury to the movant outweighs the potential harm to the opposing party; and (4) that an injunction is in the public interest. *Chase Manhattan Bank v. Dime Savings Bank of New York*, 961 F.Supp. 275, 276 (M.D.Fla.1997) (quoting *Haitian Refugee Center, Inc. v. Nelson*, 872 F.2d 1555, 1561 (11th Cir.1989)). The movant has the burden of persuasion as to each element. *Liberty Am. Ins. Group*, 199 F. Supp. 2d at 1276. If the movant fails to meet the burden as to any one of these factors, the injunction must be denied. *Id*. Azurity's request for a preliminary injunction against Shorla does not meet these elements because Azurity cannot establish a likelihood of success on the merits against Shorla, that Azurity will suffer irreparable harm if it is not granted injunctive relief, that Azurity's threatened harm outweighs

the potential harm to Shorla, or that an injunction against Shorla is in the public interest. Azurity's Motion should therefore be denied.

**B. The Motion Seeks Relief Principally against Bhattacharya, and the Single Request Directed at Shorla Has No Factual Basis.**

As a threshold matter, the Motion is, by its own terms, a motion against Bhattacharya. Azurity describes the order it seeks as one "(1) enjoining Bhattacharya from retaining, disclosing, or using Azurity's trade secrets; (2) ordering the return of all Azurity's confidential information; (3) permitting a forensic examination of Bhattacharya's personal devices and accounts; and (4) requiring certification under oath of compliance." ECF No. 23 at 2. Its Conclusion likewise "requests entry of a preliminary injunction to enjoin Bhattacharya." *Id.* at 23. Of the specific items of relief listed, only one mentions Shorla at all: a request for "[a]n order prohibiting Bhattacharya and Shorla from using or disclosing Azurity's Trade Secrets and Confidential Information." *Id.* The contractual relief, the return of information, the forensic examination, and the sworn certification are all sought from Bhattacharya alone. *Id.* at 2, 23.

That lone request has no factual predicate as to Shorla. An order prohibiting a party from using or disclosing information presupposes that the party possesses the information. Azurity offers no evidence that Shorla has ever possessed any Azurity trade secret or confidential information. To the contrary, Cunningham confirms that Shorla has never requested or received any such information, does not possess any,

and has never used any in its business. Cunningham Decl. ¶¶ 12-17. And Shorla has committed under oath that it will not use or disclose any Azurity confidential information or trade secrets and will comply with any lawful order of this Court. Cunningham Decl. ¶ 16. There is nothing for an injunction against Shorla to prevent.

Such an order would also do no more than direct Shorla to obey the law—which it already does. The Eleventh Circuit disfavors such "obey the law" injunctions, which lack the specificity Rule 65(d) requires. *See Burton v. City of Belle Glade*, 178 F.3d 1175, 1201 (11th Cir. 1999); *American Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1412 (11th Cir. 1998); Fed. R. Civ. P. 65(d)(1). Because the Motion seeks virtually nothing from Shorla, and the one thing it does seek is unsupported by any evidence and unnecessary in light of Shorla's sworn commitment, the Motion should be denied as to Shorla for this reason alone. As shown below, Azurity also cannot satisfy any of the four prerequisites for injunctive relief against Shorla.

### C. Azurity Has Not Demonstrated a Likelihood of Success on the Merits.

The Defend Trade Secrets Act (DTSA) creates a cause of action where a party misappropriates a trade secret. 18 U.S.C. § 1839(5). The statute defines "misappropriation" to include both (1) the acquisition of a trade secret through improper means and (2) the unauthorized disclosure or use of a trade secret by a person who either acquired it through improper means, knew or should have known

it was obtained through a breach of confidentiality or other duty of secrecy, or later learned that the information was a trade secret obtained by accident or mistake. 18 U.S.C. § 1839(5). The Florida Uniform Trade Secrets Act (FUTSA) similarly permits injunctive relief in the event of actual or threatened misappropriation of a trade secret. Fla. Stat. § 688.003. "Misappropriation" is generally defined "as the acquisition of a secret 'by someone who knows or has reason to know that the secret was improperly obtained or who used improper means to obtain it.'" Fla. Stat. §§ 688.002(2); *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1297 (11th Cir. 2018). A claim against Shorla therefore requires evidence that Shorla acquired, disclosed, or used an identified Azurity trade secret with the statutorily required knowledge.

**1. Azurity offers no evidence that Shorla acquired, disclosed, or used any Azurity information.**

Azurity cannot show a likelihood of success on its misappropriation claims against Shorla because it offers no evidence that Shorla itself acquired, disclosed, or used any Azurity trade secret. Every act of alleged misappropriation the Motion identifies was committed by an individual other than Shorla and before that individual had any relationship with Shorla.

As discussed above, a party may misappropriate another's trade secret by acquiring, disclosing, or using the trade secret. *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1311 (11th Cir. 2020) (citing Fla. Stat. § 688.002(2)). "A person

misappropriates a trade secret by acquisition when he acquires it and 'knows or has reason to know that the trade secret was acquired by improper means.'" *Id*. (quoting Fla. Stat. § 688.002(2)(a)). A person misappropriates a trade secret by use if they use it "without express or implied consent" and either used improper means to acquire knowledge of the secret or, at the time of disclosure or use, knew or had reason to know that his knowledge of it was derived through improper means or under circumstances giving rise to a duty to maintain its secrecy. *Id*. (quoting Fla. Stat. § 688.002(2)(b)). The DTSA's definition of misappropriation is "largely identical," and the substantive standard is treated as the same under both statutes. *Id*. at 1311 n.13; 18 U.S.C. § 1839(5).

In *Compulife*, the court held that although "the bar for what counts as 'use' of a trade secret is generally low," it still requires "exploitation of the trade secret" by the non-moving party. 959 F.3d at 1313 (quoting *Penalty Kick Mgmt. v. Coca Cola Co.*, 318 F.3d 1284, 1292 (11th Cir. 2003)). Consistent with that principle, employment by a competitor is not itself a statutory act of misappropriation. *Del Monte Fresh Produce Co. v. Dole Food Co.*, 148 F. Supp. 2d 1326, 1335 (S.D. Fla. 2001). And courts reject trade secret claims against a competing entity where there is no showing that the entity itself acquired or used the alleged trade secrets. *See Enteris Biopharma, Inc. v. Clinical Pharmacology of Miami, Inc.*, No. 1:14-CV-22770-UU, 2015 WL 12085848, at *10 (S.D. Fla. Mar. 20, 2015).

Here, the Motion's misappropriation showing is directed almost entirely at Bhattacharya. Azurity argues that Bhattacharya committed "at least one form of misappropriation" because, she allegedly transmitted PowerPoints containing confidential information to her personal email address and retained them after her employment termination. ECF No. 23 at 13. Even if true, that conduct occurred while she was still employed by Azurity and months before any relationship with Shorla. As to Shorla, the Motion devotes a single paragraph to assert that Bhattacharya's knowledge is imputable to Shorla because she is its Chief Commercial Officer and that any use would necessarily benefit Shorla. ECF No. 23 at 14-15. But Azurity identifies no trade secret Shorla acquired, no improper means it knew of, and no use by Shorla. Unlike the defendants in *Compulife*, who directed and exploited the alleged misappropriation, Shorla is accused only of hiring a former Azurity employee, a theory rejected in *Del Monte* and *Enteris*.

**2. Azurity cannot establish Shorla's knowledge through imputation of Bhattacharya's alleged pre-employment conduct.**

This Court has denied preliminary injunctive relief against a new employer on facts far stronger than those here. In *Liberty Am. Ins. Group*, a former IT director downloaded his employer's trade secret information onto a third party's laptop, transferred it to his personal computer, retained it when he left, and was found to have "in all likelihood, copied or used" the trade secret in writing software for his

new employer, WestPoint, where he became Chief Information Officer and a shareholder. 199 F. Supp. 2d 1271, 1295-96, 1302 (M.D. Fla. 2001). The officers of the new employer knew he was adapting software he had previously written to build the new employer's product, and one of them was a former colleague who had hired him. *Id*. at 1302. Even so, the court held that "the evidence does not demonstrate a reasonable likelihood of success on plaintiff's claim that … Westpoint also misappropriated [plaintiff's] source code or induced or persuaded [the former employee] to use the [plaintiff's] source code in developing source code for Westpoint." *Id*. As the court explained, although the officers knew that the former employee was adapting the software he wrote for his former employer to create the software for Westpoint, "it is not clear whether they knew, or had reason to know," that the former employee used the plaintiff's actual trade secret information to create his new employer's product. *Id*. The court also rejected the plaintiff's argument that the employee's misappropriation should be imputed to the new employer because it was "fully aware" of his role in developing the former employer's code and benefited from his work. *Id*. at 1286. The court reached that conclusion because there was no direct evidence that the new employer knew that the plaintiff's former employee retained possession of the plaintiff's trade secret when he left or that he would use it in creating the new employer's product. *Id*.

Azurity's allegations are substantially weaker than those rejected in *Liberty Am. Ins. Group*. Here, there is no evidence that Bhattacharya ever used Azurity information at Shorla, much less that Shorla knew of or encouraged any such use. Azurity instead relies on allegations pleaded on information and belief, based on the "timing and circumstances" of the employment of Bhattacharya, Gitomer, and Deacon, and asserts only that Shorla allegedly "accepted" Bhattacharya's disclosure, retention, and/or use of trade secrets. ECF No. 6 ¶¶ 82, 117, 135. Allegations pleaded on information and belief are not evidence, and they cannot carry a movant's burden on a motion for preliminary injunction. Knowledge that a senior employee previously worked for an alleged competitor does not create a reasonable inference that the new employer knew the employee retained alleged proprietary information, had access to specific alleged trade secrets, or intended to use them. Nor does Azurity allege that Shorla learned what Bhattacharya had sent to her personal account. *See* ECF No. 6 ¶¶ 84-86. And the uncontroverted record affirmatively refutes any such knowledge: Shorla never requested, received, or used Azurity information. Cunningham Decl. ¶¶ 12-17. If the employer's knowledge could not be established in *Liberty Am. Ins. Group*, where there was evidence the employee likely used trade secret source code in creating the new employer's product, it certainly cannot be established here, where Azurity offers no evidence of use at all. Because Azurity has not shown that Shorla knew or had reason to know of any alleged misappropriation

by Bhattacharya, its attempt to impute her purported pre-employment conduct to Shorla fails.

**3. The only competent evidence before the Court refutes Azurity's theory, and ordinary litigation conduct is not evidence of misappropriation.**

Azurity offers speculation; Shorla offers sworn testimony based on personal knowledge. Cunningham confirms that Shorla never requested, received, or used any Azurity confidential information or trade secrets, and that no Shorla business decision, strategy, opportunity, or competitive advantage has been based on such information. Cunningham Decl. ¶¶ 12-17. Where the only actual evidence contradicts the movant's allegations, the movant cannot clearly carry its burden of persuasion.

Unable to identify any receipt or use by Shorla, Azurity attempts to recast ordinary litigation conduct as proof of wrongdoing. It argues that Bhattacharya's attempt to attend Deacon's August 18, 2026 TRO hearing and Shorla's joint representation with other defendants show that Shorla "is aware of, and acquiesces in, the conduct at issue." ECF No. 23 at 14 & n.2. Neither fact says anything about whether Shorla acquired, disclosed, or used an alleged trade secret. Bhattacharya is a named defendant here; monitoring related litigation brought by the same plaintiff on the same alleged facts is a routine, lawful activity. Likewise, retaining common counsel is a lawful and commonplace choice among co-defendants, and Azurity cites

no authority treating it as evidence of misappropriation. Azurity's further suggestion that joint representation "necessarily entails" counsel's review of Azurity information, ECF No. 23 at 14, is unsupported speculation. Accepting Azurity's reasoning would transform the exercise of the right to defend oneself in court into substantive evidence of liability. Accordingly, Azurity cannot demonstrate a likelihood of success on the merits against Shorla, and preliminary injunctive relief is unwarranted.

**4. Azurity's breach of contract theory provides no basis for relief against Shorla.**

Azurity's second merits theory is breach of the Confidentiality, Non-Solicitation and Intellectual Property Assignment Agreement between Azurity and Bhattacharya (the "Agreement"). ECF No. 23 at 15-19. Shorla is not a party to the Agreement and Azurity identifies no basis for enjoining Shorla to perform another party's contractual obligations. Azurity's own proposed relief confirms the point: the contractual relief it requests is directed only at Bhattacharya. *Id.* at 23. ECF No. 23-1 § 4.3. Whatever claim Azurity may have for alleged damages arising from the June 2026 departures of Gitomer and Deacon, there is no ongoing covenant left for a preliminary injunction to protect, and the Agreement itself contemplates a monetary remedy for any breach of the worker non-solicitation covenant. *Id.* § 8. Moreover, the Agreement's twelve-month non-solicitation period, measured from Bhattacharya's September 2, 2025, termination, expired no later than September 2,

2026—before Azurity filed this Motion. Bhattacharya has also raised substantial defenses to the Agreement's enforceability, including that it was superseded by a subsequent written Termination Agreement. ECF No. 24, First and Eleventh Defenses. For these reasons, Azurity cannot show a likelihood of success on any contract theory that could support relief against Shorla.

**D. Azurity Has Not Demonstrated Irreparable Harm.**

Even if Azurity could show some likelihood of success, its Motion fails for the independent reason that it has not shown irreparable harm attributable to Shorla. "[A] preliminary injunction cannot be granted absent a showing of irreparable harm," and "[a]n injury is irreparable only if it cannot be undone through monetary remedies." *Liberty Am. Ins. Group*, 199 F. Supp. 2d at 1291 (citing *Cunningham*, 808 F.2d at 821). The asserted injury "must be neither remote nor speculative, but actual and imminent." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc).

First, Azurity's harm is speculative as to Shorla. Azurity's theory is that "[o]nce trade secrets . . . are taken by a rival . . . the bell cannot be unrung." ECF No. 23 at 20. But there is no evidence that any bell has been rung at Shorla. There is no evidence that Shorla possesses, has seen, or has used any Azurity document. And Bhattacharya denies ever providing any to Shorla, ECF No. 24 ¶ 64; and Cunningham confirms that Shorla has received none, Cunningham Decl. ¶¶ 13, 14,

17. Azurity identifies no lost customer, lost contract, lost sale, or business decision derived from its information. Azurity's harm theory rests instead on the possibility that Bhattacharya "remains in a position" to use information, ECF No. 23 at 1—a remote possibility, not an actual and imminent injury.

Second, Azurity's own delay refutes any inference of urgency. The emails Azurity relies on were sent through Azurity's own email system before it terminated Bhattacharya's employment and cut off her access on September 2, 2025. ECF No. 6 ¶¶ 60, 64-66; ECF No. 24 ¶ 60. Gitomer and Deacon left in June 2026. ECF No. 6 ¶ 76. Azurity sent its cease-and-desist letter to Bhattacharya on August 7, 2026, and was litigating a TRO against Deacon by August 18, 2026. *Id.* ¶¶ 84-89. Yet Azurity waited until October 23, 2026—more than thirteen months after Bhattacharya's separation and more than two months after its own demand letter—to seek relief here. ECF No. 23. A party's unexplained delay in seeking preliminary relief "necessarily undermines a finding of irreparable harm." W*real, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016). Azurity's only explanation—that it "only recently learned" of the forwarded emails, ECF No. 23 at 5—does not account for why information sitting in its own email system went unexamined for a year, or why it waited months after demanding relief from Bhattacharya to seek it from this Court.

Third, any harm is compensable. Azurity describes its own injury in economic terms of "lost business, lost revenues and profits, lost market share." ECF No. 23 at

19. Azurity is also separately pursuing Gitomer and Deacon in Pennsylvania for the same alleged harms. ECF No. 6 ¶ 88. These are classic economic injuries compensable by money damages – the very antithesis of irreparable harm. Moreover, Azurity' s own Amended Complaint concedes that it "continues to investigate the extent of the misconduct," ECF No. 6 ¶ 83, which is an admission that any harm remains speculative and unquantified.

Because Azurity has not shown an actual, imminent injury from Shorla that money damages cannot remedy, it has not carried its burden on this factor, and the Motion must be denied as to Shorla on this ground alone.

**E. The Balance of Equities Weighs Heavily against Injunctive Relief.**

Azurity must also show that its threatened injury outweighs the harm an injunction would cause Shorla. Because Azurity has not shown irreparable harm, the Court need not reach this factor. *See Liberty Am. Ins. Group*, 199 F.Supp. at 1304. In any event, this factor still weighs against relief. In *Liberty Am. Ins. Group*, the court held that the balance of hardships did not favor an injunction against a competitor even where its employee had likely used the plaintiff's trade secret information because the requested relief "would alter the status quo and award [the plaintiff] nearly all the relief it would be entitled to at a trial on the merits." *Id*. at 1305. Such relief demands a heightened showing and "should not be issued unless the facts and law clearly favor the moving party." *Id*. (quoting *Martinez v. Mathews*, 544 F.2d

1233, 1243 (5th Cir. 1976)). Azurity cannot meet even the ordinary standard as to Shorla.

Azurity's only argument on this factor is that the requested relief "imposes no undue burden on Bhattacharya or Shorla" because "[i]t simply asks Bhattacharya to do what she already promised to do." ECF No. 23 at 21. That reasoning, by its terms, does not reach Shorla, which made no promises to Azurity. On Azurity's side of the scale is a speculative injury that, if it ever materialized, could be remedied with money.

On Shorla's side, the harms are concrete and immediate. Although Azurity has not shown that Shorla used, possessed, disclosed, or even knew of any alleged trade secrets, the requested relief would nevertheless burden Shorla's business operations. An injunction would carry the implication that Shorla engaged in wrongdoing despite the absence of evidence supporting that conclusion, potentially harming its reputation and relationships with customers, business partners, and other stakeholders. An injunction predicated solely on Bhattacharya's prior employment would also impair Shorla's ability to utilize a lawfully hired executive in her ordinary commercial role and would chill the company's ability to participate fully in the marketplace through experienced personnel who bring their general skills, knowledge, and expertise to the workplace. And to the extent Azurity seeks a forensic examination of devices and accounts that may include Shorla systems,

ECF No. 23 at 2, such relief—even under a protocol—could expose Shorla's confidential business information, strategic plans, internal communications, and privileged communications to third-party review. That request is not designed to preserve evidence Azurity knows exists; it is designed to search for evidence Azurity hopes exists. Shorla has already been forced to defend these same allegations in three separate federal courts. The requested relief would impose substantial and immediate burdens on Shorla based on speculation instead of proof.

Accordingly, the balance of equities weighs decisively against injunctive relief.

**F. An Injunction Against Shorla Would Not Serve the Public Interest.**

Azurity's public interest argument rests entirely on its alleged interest in "the enforcement of restrictive covenants" and its interest "in having the Agreement upheld and in Bhattacharya's ongoing compliance with it." ECF No. 23 at 21. However, those interests have no application to Shorla, which is not a party to any restrictive covenant with Azurity. The public has no interest in restraining a non-signatory alleged competitor absent evidence that it acquired, used, or disclosed protected information.

On the contrary, the public interest weighs against the extraordinary relief Azurity seeks. First, the public benefits from robust market competition. Enjoining an alleged competitor based on speculation instead of evidence of wrongdoing

would undermine that interest. Second, the public has a strong interest in employee mobility. Congress expressly protected that interest in the DTSA by prohibiting injunctions that "prevent a person from entering into an employment relationship" or that are based "merely on the information the person knows." 18 U.S.C. § 1836(b)(3)(A)(i). Florida law likewise recognizes that a former employer may not prevent a former employee from "utilizing contacts and expertise gained during his former employment." *Liberty Am. Ins. Group*, 199 F. Supp. 2d at 1288 (quoting T*empleton v. Creative Loafing Tampa, Inc.*, 552 So. 2d 288, 290 (Fla. Dist. Ct. App. 1989)).

Absent any evidence that Shorla obtained, used, or disclosed Azurity's confidential information, the public interest decisively favors denying injunctive relief. Granting an injunction under these circumstances would merely suppress lawful competition and restrict employee mobility based on speculation instead of proof.

**G. Any Injunction Should Require Meaningful Security.**

Azurity requests that any injunction issue without bond or with a nominal $1,000 bond, relying on the Agreement's bond provision and its asserted "high probability of success." ECF No. 23 at 21–22; ECF No. 23-1 § 8. Neither rationale applies to Shorla. Shorla is not a party to the Agreement and never agreed to any bond limitation, and, as shown above, Azurity has no likelihood of success against

Shorla. Rule 65(c) requires security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Fed. R. Civ. P. 65(c). Should the Court enter any relief affecting Shorla, it should require Azurity to post security sufficient to cover the business disruption, reputational harm, and forensic and compliance costs Shorla would incur.

## IV. CONCLUSION

For the foregoing reasons, Defendant Shorla Oncology, Inc. respectfully requests that the Court deny Azurity's Motion for Preliminary Injunction as to Shorla and grant Shorla such other relief as the Court deems appropriate.

Dated: November 13, 2026

Respectfully submitted,

/s/ *Bobbi Britton Tucker*
Bobbi Britton Tucker, Esquire
PA ID No. 86463
*Pro Hac Vice Admission*
**COZEN O'CONNOR**
One Oxford Centre
301 Grant Street, 41st Floor
Pittsburgh, PA 15219
(412) 620-6519
bbrittontucker@cozen.com

Miguel Alexander Pozo, Esquire
MN ID No. 0400728
*Pro Hac Vice Admission*
**COZEN O'CONNOR**
150 South Fifth Street, Suite 1200
Minneapolis, MN 55402
(612) 260-9073
mpozo@cozen.com

*Attorneys for Defendant Shorla Oncology, Inc.*

## CERTIFICATE OF SERVICE

I certify that on November 13, 2026, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which will serve all counsel of record.

*/s/ Bobbi Britton Tucker*
Bobbi Britton Tucker

DRAFT